## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JUAN F. SOLANO,                          :
                                                              Case No. 3:11cv00112
       Petitioner,                 :         Case No. 3:08cr00154-1

 vs.                                              :         District Judge Walter Herbert Rice
                                                              Chief Magistrate Judge Sharon L. Ovington
UNITED STATES OF AMERICA,     :

       Respondent.               :

---

## REPORT AND RECOMMENDATIONS[1]

---

### I.    <u>Introduction</u>

Petitioner Juan F. Solano previously pled guilty to, and was convicted of committing, conspiracy to distribute and possess with intent to distribute heroin, a violation of 21 U.S.C. §§ 846(a)(1), 841(a)(1), and 841(b)(1)(A).  (Doc. #s 10, 52, 53).  He is presently serving a 120-month sentence.  (Doc. #s 80, 82).

Salano was born in the Dominican Republic.  Many years ago, at age seven, he legally entered the United States and became a legal permanent U.S. resident.  In the present case, he asserts that at the time he pled guilty, he believed he was a U.S. citizen.  He consequently thought – at the time of his guilty plea and sentencing and for a long time thereafter – that his conviction would not subject him to deportation from the U.S.  He was mistaken.  He was

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

not, and is not, a U.S. citizen.  His guilty plea therefore subjects him to removal from the U.S. on the ground that he, a person without U.S. citizenship, committed a violation of federal law relating to a controlled substance – specifically, at least one kilogram of heroin. *See Padilla v. Kentucky*, 559 U.S. 356, 368 (2010) (citing 8 U.S.C. §1227(a)(2)(B)(i) (eff. Dec. 23, 2008); *see also* Salano's Exhibits 22, 24.

This situation forms the basis of Salano's pending claim that his counsel provided constitutionally ineffective assistance during his plea and sentencing proceedings by (1) misadvising him about his citizenship status and the deportation consequences of his guilty plea, and (2) failing to interrupt his plea hearing when he (Salano) advised the Court that he believed he was a U.S. citizen.  These are the sole remaining claims at issue in his Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. §2255.

District Judge Walter H. Rice remanded the case "for an evidentiary hearing on: (1) the question of whether the Motion to Vacate, Set Aside or Correct Sentence was timely filed under §2254(f)(4), *i.e.*, when the facts supporting Petitioner's ineffective assistance of counsel claim could have been discovered through the exercise of due diligence; and (2) the merits of Petitioner's ineffective assistance of counsel claim."  (Doc. #129, PageID at 608). The case is presently pending upon the record of the §2255 evidentiary hearing (Doc. #143), which includes the parties' documentary evidence; the parties' cogent and well-written post-hearing briefs (Doc. #s 142, 150); and the record as a whole.

## II.    Procedural History

### A.    Indictment

After Salano's indictment and arrest, the Court appointed attorney Aaron G. Durden to represent him.  Attorney Durden then represented Salano during plea negotiations and at his plea and sentencing hearings.  During the plea and sentencing hearings, the subject of Salano's citizenship arose.

### B.    Plea Hearing – March 4, 2009

During Salano's plea hearing, Judge Rice asked him about his citizenship and cautioned him about the possibility of deportation:

| | |
|---|---|
| The Court: | Are you a citizen of our country, sir? |
| [Salano]: | I believe so, sir, yes. |
| The Court: | All right. I ask only because if you were not you would be facing deportation, do you understand? |
| [Salano]: | Yes, sir. |

(Doc. #121, PageID at 537).  At the conclusion of the hearing, Judge Rice accepted Salano's guilty plea and set the case for sentencing.

### C.    July 14, 2009 – Sentencing Hearing

Attorney Durden continued to represent Salano through his sentencing proceedings, including the final sentencing hearing.  In addition to his 120-month sentence, Judge Rice imposed a five-year term of supervised release subject to certain conditions.  When informing Salano of these conditions, Judge Rice stated, in part, "This Defendant being a

3

legal resident may be subject to deportation and of course if he is deported supervised release with all of its conditions becomes an academic matter only." (Doc. #139, PageID at 731).

Near the hearing's conclusion, attorney Durden asked that Salano be permitted to surrender voluntarily so he could return home with his family during the time before he was ordered to report to prison. *Id*. at 733. Judge Rice denied this request, stating (in part):

> I realize your client has been in this country for many, many years, but he is not a citizen, and is still a citizen of another country, and this Court believes that at this juncture sentence having been imposed, there exists no condition or combination of conditions such as to guarantee his appearance when necessary or the safety of any other person or the community....

(Doc. #139, PageID at 733-34). A few moments later, Judge Rice asked Salano if he had any questions. Salano answered, "No, your Honor." *Id*. at 734.

## III. <u>Section 2255 Evidentiary Hearing</u>

Attorney Carla Morman represented Salano during his §2255 hearing. More recently, attorney David Williamson was appointed to represent Salano. During the §2255 hearing, both Salano and attorney Durden testified.

### A. <u>Salano's Testimony and Exhibits</u>

Salano testified that he was born in the Dominican Republic in 1966. He lawfully entered the United States at age seven on November 4, 1973. His documentation at that time included an Immigrant Visa and Alien Registration form and a passport. His mother had been in the United States since the 1960s. Salano lived in the Bronx.

In 1979, Salano's mother became a naturalized United States citizen. On direct

4

examination by his counsel, Salano testified:

      Q.      You were a minor at the time of her naturalization?

[Salano]      Yes, I was.

      Q.      How old were you?

      A.      I was 13.

* * *

      Q.      What did you believe to be your citizenship as you were growing up?

      A.      I believed I was a citizen of the United States.

      Q.      What was the basis for that belief?

      A.      Due to my mother becoming a citizen of the United States, derivative citizenship.

      Q.      Why did you believe you had that through your mom?

      A.      My mother, that's what my mother told me, that's how I was familiar.

      Q.      Was it important that you were – as part of that explanation that you were a minor at the time she attained that citizenship?

      A.      Yes.

      Q.      Sir, did you continue to believe you had derivative citizenship through your mother's naturalization up through your naturalization up through your plea hearing and sentencing in this case before Judge Rice?

      A.      Yes.

      Q.      Did you continue to believe you were a U.S. citizen from the time of your sentencing in this case up through at least a portion of your incarceration at Moshannon Valley?

5

A.      Yes.

Q.      The basis for that, again, was that your mother had advised you?

A.      My mother had advised me.

(Doc. #143, PageID at 777-79).

Salano met with attorney Durden sometime in February 2009.  During this meeting,

Salano raised the issue of citizenship.  He testified:

> I asked him a question ....  I explained that they explained to me to make sure I was a citizen.  If not, I will face deportation.  That was the only discussion I had on that.

> This, when he explained the follow up, I never had a follow up on this right here.  There was never a follow up.

* * *

> The one time when I asked him, he explained to me that he had to make sure I was a citizen and not face deportation one time.  That was it.

(Doc. #143, PageID at 811-12 (footnote added)).  Salano was next asked, "You had one

conversation with him about this?" – he answered, "Yes, sir."  *Id*. at 812.

Salano explained further, "As I was getting ready to sign my Plea Agreement, I had a

conversation back where I was incarcerated somebody told me that I better make sure about

my citizenship because if I was to sign the Plea Agreement I could, I will be deported.  So I

mentioned this to Mr. Durden."  (Doc. #143, PageID at 784).  Salano testified that attorney

Durden responded by telling him, "everybody in jail thinks that they're a lawyer, that he's my

lawyer, that I should listen to him and not worry about them."  *Id*.  Salano further testified as

6

follows:

> Q.     Did Mr. Durden ask you when you came to the United States?

> [Salano]     Yes, I proceeded to explain to him my background.  I explained to him when I came to the United States, that my mother became a citizen while I was young, and several things.  So he proceeded to tell me that I shouldn't worry about it because I was a citizen, I don't have anything to worry about, I was an American citizen.

(Doc. #143, PageID at 784-85).

On February 17, 2009, attorney Durden sent Salano a memo stating, "I shall visit you before the end of the week to further discuss the matter following further inquiries pertaining to the issue of your citizenship."  (Govt's Exh. 4).  Salano testified, "When this memo was sent, there was never a follow up on this."  (Doc. #143, PageID at 812, 828-29).  He further indicated, "The one time when I asked him [attorney Durden], he explained to me that he had to make sure I was a citizen and not face deportation one time.  That was it."  *Id*.  Salano described this as a "regular conversation where my attorney stated to me that I have nothing to worry about, I wouldn't be deported.  He assured me."  *Id*., PageID at 813.

Salano indicated that on the date of his plea hearing (March 4, 2009), he believed he was a U.S. citizen.  During his §2255 hearing, he explained the basis of his belief as follows:

> I was brought up [with] my mother telling me I was a citizen and my Attorney had just assured me that I was and I had nothing to worry about.  Therefore, I was double sure.

(Doc. #143, PageID at 790-91).  Salano further testified during the §2255 that he did not believe the possible deportation consequence of not being a U.S. citizen applied to him.

Specifically, he testified:

> Q.    Did you believe that the Court's statement [at the plea hearing] regarding deportation applied to you?

[Salano]    No, I didn't.

> Q.    And why not?

> A.    I believed I was a citizen.

> Q.    What was that based on?

> A.    Based on my growing up and my mother telling me and my Attorney just assured me that I was.

> Q.    Did he assure you that therefore you were not subject to deportation?

> A.    Correct.

(Doc. #143, PageID at 791).  This testimony conflicts with attorney Durden's testimony during the §2255 hearing.  *See infra*, §III(B).

Salano testified that he would not have pled guilty if he had known he was not a U.S. citizen and would face deportation.  (Doc. #143, PageID at 791).  He explained:

> Well, I mean, I've been here 40 years, 42 years.  I came here when I was very small.  All my family lives here.  My mother, my father, my sister, my brother, my cousins, my kids.  I have no ties back home.  I only went there one time throughout my whole life.  I don't really know the country.  So I really have no one to go to over there.

*Id*. at 792.  Salano testified that the risk of deportation concerned him more than a possible prison sentence.  *Id*.

Turning to Salano's sentencing preparations, he acknowledged that he read the final

8

presentence investigation report before he was sentenced, and he reviewed it with attorney

Durden.  The presentence report states:

> 57.    .... According to Immigration and Customs Enforcement (ICE) Salano is
> legally residing in the U.S. as a permanent resident and may live and
> work in the U.S.  ICE further indicated upon conviction for the instant
> offense, the defendant may be amenable to removal proceedings for
> violations of the Immigration Act.....

(§2255 Hrg., Government's Exh. 13, p. 13).

During the §2255 hearing, Assistant U.S. Attorney Hunt asked Salano, "You knew

there was a risk that you may be deported?"  Salano answered, "It says I may be deported,

but since I was, I believed I was a citizen, I didn't think that pertained to me."  (Doc. #142,

PageID at 816).  Salano acknowledged that the presentence report says he is a permanent

resident and does not say he is a citizen.  *Id*.  When Salano was asked, "Did you discuss the

fact [with attorney Durden] that this PSR was saying that you could be deported?"  He

answered, "No, I never discussed the fact that I may be deported."  *Id*. at 817.  Salano

believed that the possibility he may be deported – as mentioned in the PRS – did not pertain

to him because he believed he was a U.S. citizen.  *Id*.  And, he testified, "My attorney had

assured me I was a citizen and had nothing to worry about." *Id*. at 829.  This testimony

directly conflicts with attorney Durden's testimony.  *Infra,* §III(B).

Turning to Salano's presentence report, it states:  "Citizenship: USA (permanent

resident)."  *Id*. at 830; §2255 Hrg., Govt.'s Exh. 13, p. 3.  During the §2255 hearing, Salano's

counsel questioned him about this as follows:

> Q.      Did you understand that USA citizenship can be derivative at the time you read that?

[Salano]      Correct.

> Q.      So that what you read there did only confirm what you had been told previously by your Attorney and what your understanding was that you had USA citizenship, correct?

> A.      Correct.

(Doc. #143, PageID at 830-31).

Salano acknowledged during the §2255 hearing that he heard Judge Rice tell him – at his sentencing hearing – he would not be granted voluntary surrender because he was a citizen of another country.  *Id*. at 824.

On or near April 23, 2010, during Salano's incarceration (which presently remains ongoing), he received a copy of an immigration detainer that informed him, "Investigation has been initiated to determine whether this person is subject to removal from the United States."  (Doc. #143, PageID at 779; §2255 Hearing, Petitioner's Exhibit 15).  Salano testified that this was the first time he had any reason to suspect that he was subject to removal or deportation from the U.S.  (Doc. #143, PageID at 780).  This was also the first time he questioned the accuracy of Mr. Durden's advice about his citizenship or whether his guilty plea subjected him to deportation.  *Id*. at 796.

Salano filed his § 2255 motion on April 6, 2011, less than a year after receiving a copy of the immigration detainer on or near April 23, 2010.

Once Salano realized he faced deportation, he took steps to confirm or establish his

U.S. citizenship by filing an N-600 Application for citizenship.  (§2255 Hrg., Pet.'s Exh. 18).

The U.S. Immigration and Naturalization Service denied his application because he was not

eligible for derivative citizenship.  In support of his N-600 Application, Salano submitted a

document appearing to be his mother's sworn affidavit, dated April 12, 2011, wherein his

mother stated, in part: "I was assured by the person who prepared my application for

naturalization that my children had automatically been awarded their naturalized status upon

my application [for U.S. citizenship] being granted...."  (§2255 Hrg., Pet.'s Exh. 19, p. 7).

On September 24, 2011, the U.S. Citizenship and Immigration Services issued a

Notice of Decision denying Salano's application for citizenship.  The Notice explains that

because Salano's parents were married on the date his mother was naturalized, he was not

eligible for citizenship based only on his mother's naturalized status.  Under the law

applicable at that time, his derivative citizenship would have occurred only if both his parents

were naturalized or mother was naturalized and his father later became naturalized before

Salano's 16th birthday.  (§2255 Hrg., Pet.'s Exh. 20).  Because neither situation existed, his

application was denied.[2]  Salano administratively appealed the denial.  His appeal was

dismissed on February 16, 2012.  (§2255 Hrg., Pet.'s Exh. 21).

In March 22, 2013, the U.S. Department of Homeland Security began removal

proceedings against Salano.  (§2255 Hrg., Pet.'s Exh. 22).  On May 14, 2013, during an

immigration hearing, an Immigration Judge ordered Salano removed from the United States.

---

[2] Salano indicated during his §2255 hearing that his father became a naturalized citizen in 1986.
(Doc. #143, PageID at 825).  By then, Salano was more than 18 years old.

(§2255 Hrg., Pet.'s Exhs. 23, 24).

**B.    Attorney Durden's Testimony**

On November 5, 2008, the Court appointed attorney Durden to represent Salano. Attorney Durden's notes, dated November 12, 2008, reveal that he intended to ask Salano about his U.S. citizenship status.  Specifically, attorney Durden noted, "Inquire about client status of his U.S. citizenship.  (§2255 Hrg., Govt.'s Exh. 2; *see* Doc. #143, PageID at 840-41).

Attorney Durden testified that on November 12, 2008, he had a conversation with Salano about his citizenship status.  (Doc. #143, PageID at 842).  Attorney Durden indicated, "As I recall, ... he asked why was his brother and the other codefendant a gentleman named Tapia were being released on OR bond or otherwise and yet he wasn't.  The only conversation was, they are citizens, you're not." *Id*. at 841-42.

On February 10, 2009, before Salano's plea hearing (on March 4, 2009), attorney Durden sent Salano a copy of the plea agreement.  (§2255 Hrg., Govt.'s Exh. 3).  Durden visited Salano on February 16, 2009.  Their conversation turned disagreeable on the issue of Salano's citizenship.  Attorney Durden testified:

> Actually it got pretty heated because he was insistent that he was a citizen.  I said I don't believe you are based upon the findings.  I'm not an immigration lawyer but the evidence in front of me indicates you're not.  So we ended the meeting and I sought to try and follow up with that issue.

(Doc. #143, PageID at 845).  Attorney Durden further testified that he believed Salano was not a citizen, and he discussed with Salano the possibility he would be deported if he was not

a citizen.  It was at this point during their February 16th meeting that the conversation "got heated."  (Doc. #143, PageID at 846).

Attorney Durden's follow-up included phoning both ICE and Salano's sister without success in obtaining information.  *Id*. at 846, 861.  He could not recall if he phoned Salano's mother – specifically, he testified, "I can't sit here and tell you if I did."  *Id*. at 862.  He did, however, contact immigration attorney Karen Bradley.  *Id*. at 846, 861.  Although attorney Durden could not recall the specifics of their discussion, he remained convinced after they spoke that Salano was not a U.S. citizen.  *Id*. at 846, 858.

Attorney Durden acknowledged that he did not conduct independent research on the topic of citizenship or derivative citizenship as applied to Salano, beyond calling ICE and speaking with immigration attorney Bradley.  *Id*. at 860.  Attorney Durden does not hold himself out to be an immigration attorney.  Still, he understood, "if you're not born in America you're not a citizen unless you've been granted citizenship."  *Id*.  He further understood that Salano could possibly be deported if he was not a citizen.  *Id*. at 846.

As noted previously, Judge Rice asked Salano, during his plea hearing, if he was a U.S. citizen.  Salano responded, "I believe so, sir, yes."  *Supra*, §II(B) (quoting Doc. #121, PageID at 537).  During attorney Durden's testimony at the §2255 hearing, the following colloquy took place:

> Q.    Based on what you've told us today, from your review of the pretrial reports and your conversations, that was not in fact that case, your judgment was that he [Salano] was not a citizen?

13

[Durden]  True.  That was my judgment, yes.

  Q.  So while you were in there with him, Mr. Salano answered incorrectly during the plea hearing?

  A.  Well – and again I guess if the question is should I have jumped in and said something?  Probably so.  When Judge Rice still indicated ... went through the protocols if he were not a citizen and read to him what would happen.

  Q.  So, you would agree that you should probably have interceded at the moment he incorrectly answered that question and said that I believe I'm a citizen?

  A.  I believe I should have ....

(Doc. #143, PageID at 868).  Attorney Durden further testified, "I don't want to be in Open Court arguing with my client in front of the judge about this.  Once the judge made that – gave him that statement of caution, I was okay with still proceeding."  *Id*. at 869-70.

  When asked about the possibility of obtaining better citizenship information than what he had learned from immigration attorney Bradley, attorney Durden replied, "I thought I had the answer, okay, I was, you know, I had the answer that he was not indeed a citizen.  His understanding or belief otherwise was his issue.  I – as the process works in my mind, it will ferret itself out."  *Id*. at 870-71.

  Turning to the presentence reports, attorney Durden testified that he went over both the initial and final presentence reports with Salano.  *Id*. at 847-48.  Attorney Durden believed that they talked about Salano's citizenship problem during their discussion about his Presentence Report, but they "stayed at an impasse."  (Doc. #143, PageID at 849).  Attorney Durden candidly acknowledged that he could not recall whether they again discussed

14

Salano's citizenship problem when they went over the final presentence report.  *Id*.  Attorney Durden was then asked, "At any time did you tell him that he would not be deported?"  He answered, "No."  *Id.* at 850.

Attorney Durden testified that during their meetings regarding his bond, plea, and presentence reports, he never told Salano that he was a U.S. citizen.  *Id*. at 850-51.  During the course of representing Salano, attorney Durden never assured him that he would not be deported.  *Id*. at 849.

## IV.    28 U.S.C. § 2255 and Timeliness

A federal prisoner who claims that his sentence was imposed in violation of the Constitution or laws of the United States or "is otherwise subject to collateral attack" may move the sentencing court to vacate, set aside, or correct his sentence.  28 U.S.C. §2255(a).  To warrant relief under §2255, a federal inmate "must demonstrate that an error of constitutional magnitude occurred..." and that the error "had a substantial and injurious effect or influence on the guilty plea or the jury's verdict."  *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2006).

To be timely, a §2255 motion must be filed within the one-year period after the latest of four possible dates listed in §2255(f).  *Phillips v. United States*, 734 F.3d 573, 580 (6th Cir. 2013).  Of those possible dates, the most significant for the present case are either "the date on which the judgment of conviction [became] final" or "the date on which the facts supporting [Salano's] claim or claims presented could have been discovered through the

exercise of due diligence."[3]  28 U.S.C. §§2255(f)(1), (4).

At first look, Salano's §2255 appears untimely because he did not file his §2255 Motion until April 6, 2011, well beyond one year after his conviction became final (on July 31, 2009).[4]  Salano disagrees.  He maintains that his petition was timely filed under §2255(f)(4) because he filed it within one year of April 23, 2010, the date he received the immigration detainer.  He reasons that by his exercise of due diligence, he could not have discovered any earlier that Mr. Durden misadvised him about his citizenship and deportation consequences of his guilty plea.

The due-diligence "standard 'does not require the maximum feasible diligence, only due, or reasonable, diligence.'"  *Jefferson v. United States*, 730 F.3d 537, 544 (6th Cir. 2013) (citations omitted).  The "key question is whether, taking into account 'the reality of the prison system,' [Salano] could have discovered the factual predicate for his claims using due diligence more than a year before filing ...."  *Id*. (internal citation omitted).  Salano "'bears the burden of proving that he exercised due diligence.'"  *Id*. (citation omitted).

In his Decision and Entry, Judge Rice indicated that if Salano "can prove that the facts supporting this [ineffective assistance of counsel] claim were not discovered until April 23,

---

[3]  The other two §2255(f) dates are not at issue.  Salano's does not argue that the Government created an impediment to his effort to file a §2255 Motion and Judge Rice rejected his remaining "new rule/retroactivity" argument.  (Doc. #129, PageID at 604-06).

[4]  Salano's conviction became final on July 31, 2009 because his judgment of conviction was entered on July 17, 2009 and his notice of appeal was due within 14 days or by July 31, 2009.  *See* Fed. R. App. P. 4(b)(1)(A)(i); *see also Gillis v. United States*, 729 F.3d 641, 644 (6th Cir. 2013).

2010, and could not have been discovered any earlier through the exercise of due diligence, then his claim could have been considered timely filed." (Doc. #129, PageID 607).

Salano argues that there is no evidence showing he could have discovered the deportation consequences of his guilty plea before he received the immigration receipt of the immigration detainer on April 23, 2010. He points out that while growing up, he believed that he held derivative U.S. citizenship through his mother and that his mother advised him that he held such derivative citizenship. His belief of this continued, according to Salano, through his plea hearing, sentencing, and incarceration until he received the immigration detainer. (Doc. #142, PageID at 751-52).

The record of Salano's sentencing hearing reveals that Judge Rice told Salano that he – Salano – was not a U.S. citizen. This arose in the context of attorney Durden's request for Salano's release so he could have "an opportunity to return home with his family ...." (Doc. #139, PageID at 733). Judge Rice denied this request based in part on his lack of U.S. citizenship. Specifically, Judge Rice stated:

> I realize your client has been in this country for many, many years, but he is not a citizen, and is still a citizen of another country, and this Court believes that at this juncture sentence having been imposed, there exists no condition or combination of conditions such as to guarantee his appearance when necessary ....

(Doc. #139, PageID at 733-34). Judge Rice's reference to "this country" means the United States because that is where Salano had been living since age seven, or as Judge Rice noted, "for many, many years ...." (Doc. #139, PageID at 733-34). Consequently, there is no lack

17

of clarity and no ambiguity either in Judge Rice's next statement that "he is not a citizen" –
meaning, he is not a U.S. citizen – or in Judge Rice's further statement that Salano "is a
citizen of another country" – meaning, a country other than the U.S.  At a minimum, these
statements informed Salano that Judge Rice believed he is not a U.S. citizen, thus placing
Salano on notice at his sentencing hearing on July 14, 2009 that Judge Rice thought Salano's
citizenship belief was wrong.  Given these statements by Judge Rice, reasonable or due
diligence exercised by Salano would have alerted him to at least the very real possibility that
attorney Durden had allegedly misadvised him about his citizenship and deportation
consequences of his guilty plea.

      In addition, Judge Rice based his decision to deny Salano's request for voluntary
surrender on Salano's lack of U.S. citizenship and his status as a "citizen of another country
...."  (Doc. #139, PageID at 733-34).  Salano thus encountered at his sentencing hearing a
major real-world effect of his lack of U.S. citizenship.  He therefore had sufficient
information at his sentencing hearing to enable him to discover, through the exercise of due
diligence, that attorney Durden had allegedly misadvised him about his U.S. citizenship and
deportation consequences.

      As a result, the date of Salano's sentencing, July 14, 2009, was "the date on which the
facts supporting the claim [ineffective assistance of counsel] could have been discovered
through the exercise of due diligence."  28 U.S.C. §2255(f)(4); *see Jefferson*, 730 F.3d at
544.

18

Salano did not file his §2255 Motion until April 6, 2011, well beyond one year after July 14, 2009, the date exercise of due diligence could have led him to discover the basis of his present ineffective assistance claim against attorney Durden.

Accordingly, Salano's §2255 motion is barred by 28 U.S.C. §2255(f)'s one year statute of limitation.

**V.      Ineffective Assistance of Counsel**

The right to counsel guaranteed by the Sixth Amendment "'is the right to the effective assistance of counsel.'"  *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970)).  This right applies "at all 'critical' stages of the criminal proceedings.  Critical stages include … the entry of the guilty plea." *Missouri v. Frye*, _ U.S. _, 132 S.Ct. 1399, 1405 (2012) (citations omitted); *see Lafler v. Cooper*, _U.S._, 132 S.Ct. 1376, 1384 (2012); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

To establish his claim of ineffective assistance of counsel during plea bargaining, Salano must make the two-part showing – deficient performance and prejudice – described in *Strickland*.  *See Frye*, _U.S. at _, 132 S.Ct. at 1405 (applying *Hill*, 474 U.S. at 57).  First, he must show that attorney Durden's performance was deficient.  "This requires showing that counsel made errors so serious that he or she was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  *Strickland,* 466 U.S. at 687.  Second, Salano must establish prejudice – that is, he "must show that there is a reasonable probability that, but for

19

[his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59; *see Lafler*, __U.S.__, 132 S. Ct. at 1384.

The deficient-performance showing would be straightfoward for Salano if he credibly testified that attorney Durden misadvised him about his U.S. citizenship and told him not to worry about it. This is so because this information – assuming attorney Durden gave it to Salano as he related – was incorrect. Salano was not, and is not, a U.S. citizen.

Did attorney Durden actually misadvise Salano about his citizenship and deportation consequences? Based on the testimony and evidence from the §2255 hearing, the answer is no.

One problem that Salano faces is that his own testimony about what attorney Durden told him during their February 2009 discussion reveals that attorney Durden left the issue unresolved. According to Salano, attorney Durden did tell him that he was a U.S. citizen and not to worry about deportation consequences of pleading guilty. But, Salano also testified, "The one time when I asked him [attorney Durden], he explained to me that he had to make sure I was a citizen and not face deportation one time. That was it." (Doc. #143, PageID at 812). Given this, Salano's testimony indicates that the issues regarding his citizenship and deportation consequences were unresolved during the one and only discussion about these issues he had with attorney Durden.

Salano also has credibility problems on the key historical facts concerning the citizenship advice attorney Durden gave him. Salano's testimony about attorney Durden's

misadvice – that he was a U.S. citizen and had no need to worry about deportation consequences of his guilty plea – was less credible than attorney Durden's contrary testimony.  Attorney Durden testified that he never told Salano he was a U.S. citizen.  This is credible because it is consistent with Salano's testimony that attorney Durden "explained to me that he had to make sure I was a citizen and not face deportation one time.  That was it." (Doc. #143, PageID at 812).  Salano's testimony, moreover, defies common sense.  It stretches the imagination to believe that a very experienced criminal attorney, like attorney Durden, would have conclusively told Salano that he was a U.S. citizen without also explaining the need for further research into the issue.  More significantly, attorney Durden's memo to Salano on February 17, 2009 (the day after they discussed Salano's citizenship) establishes that the issue remained unresolved.  Attorney Durden wrote in the memo, "I shall visit you before the end of the week to further discuss the matter following further inquiries pertaining to the issue of your citizenship."  (§2255 Hrg., Govt's Exh. 4).  This information is consistent with attorney Durden's testimony about their discussion on February 16, 2009 during which Salano insisted he was a citizen, and attorney Durden responded, " I don't believe you are based upon the findings.  I'm not an immigration attorney but the evidence in front of me indicates you're not."  (Doc. #143, PageID at 845).  This explains why attorney Durden then spoke with immigration attorney Bradley, a needless step if, as Salano testified, he had already concluded and affirmatively advised Salano that he was a U.S. citizen.

Attorney Durden's February 17, 2009 memo is also consistent with his testimony that

after he met with Salano, he took further steps to determine Salano's citizenship by discussing the matter with immigration attorney Bradley and phoning ICE. Attorney Durden's testimony about his discussion with attorney Bradley was straightforward and clear about what he remembered and what he did not. This enhances his credibility. For instance, he testified in a forthright manner that he could not recall the specifics of their conversation, but he did recall that he remained convinced after talking with attorney Bradley that Salano was not a U.S. citizen.

Additionally, the undersigned agrees with the Government's contentions about Salano's allegations of misadvice: "It is illogical to believe – 1) having little experience with immigration law; 2) his long history of service to defendants in this Court; 3) the personal risk inherent in sloppy or improper representation of defendants (malpractice, ethical complaints, etc.); and 4) in the face of all information to the contrary (i.e., the bond report, PSR, the immigration attorney's guidance) - that Mr. Durden would make definitive promises to Defendant that he was a citizen and not subject to deportation." (Doc. #150, PageID at 1041-42).

Salano's demeanor and manner of testifying during the §2255 hearing detracted from his credibility. He appeared especially uneasy as he testified. Most witnesses, of course, exude a certain degree of nervousness while testifying. Salano's uneasiness was beyond the norm. At times, it appeared as though he was carefully trying to formulate the answer most supportive of his ineffective assistance of counsel claim rather than simply answering the

questions based on the events as he honestly remembered them.

Perhaps Salano's best argument emerges from Attorney Durden's §2255-hearing testimony about Salano's plea hearing.  Attorney Durden testified that he should have interceded during Salano's plea hearing when Salano stated he believed he was a U.S. citizen.  (Doc.. #143, PageID at 868).  The reason attorney Durden did not intervene at that moment was that he did not want to argue with Salano in open court in front of Judge Rice. He further explained, "Once the judge made that – gave him that statement of caution, I was okay with still proceeding."  *Id*. at 870.  As noted above, *supra*, §II(B), the cautionary statement by Judge Rice occurred during Salano's plea hearing as follows:

> THE COURT:     Are you a citizen of our country, sir?
>
> [Salano]:      I believe so, sir, yes.
>
> THE COURT:     All right.  I ask only because if you were not you would be facing deportation, do you understand?
>
> [Salano]:      Yes, sir.

(Doc. #121, PageID at 537).

The issue here is whether attorney Durden's representation of Salano during the plea hearing "was reasonable considering all the circumstances."  *Strickland*, 466 U.S. at 688.  At first glance, this is a close question in light of attorney Durden's initial acknowledgment that he should have intervened when Salano incorrectly indicated he was a U.S. citizen.  This, however, would improperly divorce Durden's on-the-spot decision not to intervene from all the circumstances he faced.  Foremost in all the circumstances was Judge Rice's caution to

23

Salano about the deportation problem and consequence his guilty plea would have if he was not a U.S. citizen.  Judge Rice's caution to Salano was consistent with the information attorney Durden had provided Salano during their meeting on February 16, 2009.  (Doc. #143, PageID at 845).  Viewing this from attorney Durden's perspective at the time, *see Strickland*, 466 U.S. at 669, he knew Salano had been repeatedly warned about the possibility of deportation he faced upon pleading guilty.  The fact that Salano held fast to his belief that he was a U.S. citizen did not eliminate or alter the information he possessed at the time about the deportation consequence he faced if he was not a U.S. citizen.  Attorney Durden, moreover, never assured Salano that he was a U.S. citizen and never told Salano he would not be deported.  (Doc. #143, PageID at 850-51).  In light of these all these circumstances, attorney Durden's decision not to intervene during the plea hearing is due the strong presumption that his representation of Salano fell "within the wide range of reasonable professional assistance..." Salano was constitutionally due.  *Strickland*, 466 U.S. at 689.

Turning to Salano's need to show prejudice, he cannot do so because attorney Durden did not misadvise him about his citizenship and deportation consequences.  Without this attorney error, the record of Salano's guilty plea stands as it is with Salano knowingly and voluntarily choosing to plead guilty rather than proceeding to trial.

Accordingly, Salano's ineffective assistance of counsel claim lacks merit.  In the event this conclusion becomes final, it fully resolves the sole remaining claim of ineffective assistance of counsel Salano advances in his Motion to Vacate, Set Aside or Correct

Sentence (Doc. # 108).

## IT IS THEREFORE RECOMMENDED THAT:

1.  The Government's Motion to Dismiss (Doc. #116) be GRANTED;

2.  Salano's Motion to Vacate, Set Aside or Correct Sentence (Doc. #108) be DENIED and DISMISSED with prejudice;

3.  The Court decline to issue a certificate of appealability and deny Salano leave to appeal in forma pauperis; and

4.  The Court terminate this matter on its docket.

November 2, 2015

_____s/Sharon L. Ovington_____
Sharon L. Ovington
Chief United States Magistrate Judge

25

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).